**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JARROD TAYLOR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 14-0439-WS-N** |
| | ) | |
| **JEFFERSON S. DUNN,** | ) | |
| **Commissioner, Alabama Department** | ) | |
| **of Corrections,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER**

This death penalty habeas case comes before the Court on Respondent's Motion to Dismiss Untimely Petition (doc. 26). The Motion has been briefed and is now ripe.[1]

**I.      Relevant Procedural History.**

Petitioner, Jarrod Taylor, was convicted of four counts of capital murder and sentenced to death by Mobile County Circuit Judge Douglas Johnstone on August 25, 1998. (R-113.) Taylor's convictions and sentence were affirmed on direct appeal by both the Alabama Court of Criminal Appeals and the Alabama Supreme Court. (R-114, R-115.) On January 7, 2002, the United States Supreme Court denied Taylor's petition for writ of certiorari (R-116), thereby concluding Taylor's direct appeal.

On July 31, 2002, some 205 days after the Supreme Court denied review, Taylor filed a Rule 32 Petition seeking postconviction relief in state court. (Vol. 18, at 16-124.) On October 23, 2003, Mobile County Circuit Judge Herman Thomas entered a series of orders summarily

---

[1]      As originally framed, petitioner's claims were brought against Kim Thomas, in his capacity as Commissioner of the Alabama Department of Corrections. During the interim, Jefferson S. Dunn has supplanted Thomas as Commissioner of the Alabama Department of Corrections. By operation of Rule 25(d), Fed.R.Civ.P., Dunn is automatically substituted for Thomas as the party defendant herein, and the Court **orders** that Jefferson S. Dunn be substituted for Kim Thomas as the named defendant in these proceedings.

dismissing various claims for relief set forth in Taylor's Rule 32 Petition (as amended), on grounds that they were procedurally barred from review under Rule 32.2(a), Ala.R.Crim.P.; filed after expiration of the limitations period prescribed by Rule 32.2(c), Ala.R.Crim.P.; insufficiently pleaded despite Taylor having received multiple opportunities to amend his petition; and/or warranted dismissal under Rule 32.7(d), because they failed to present material issues of fact or law.  (R-117, R-118, R-119, R-120.)  Nearly two years later, on August 1, 2005, Judge Thomas entered an order finding that, pursuant to the October 2003 rulings, "all of the claims in Petitioner Taylor's corrected first amended Rule 32 petition have been dismissed."  (R-122, at 2.)  Based on that determination, Judge Thomas summarily dismissed Taylor's Rule 32 Petition and denied Taylor's request for relief from his capital murder convictions and death sentence.  (*Id.*)  Taylor filed a notice of appeal in order to commence an appeal of the dismissal of his Rule 32 petition before the Alabama Court of Criminal Appeals.

What happened next lies at the core of the Motion to Dismiss.  On May 10, 2006, the Alabama Court of Criminal Appeals ("CCA") entered a two-page order dismissing Taylor's appeal for the technical reason that his notice of appeal had been signed by a New York attorney who had not been granted *pro hac vice* status in this case.  (R-125.)[2]  Critically, the CCA not only dismissed Taylor's appeal, but also "ORDERED that the certificate of judgment in this case shall enter forthwith."  (*Id.*)  The CCA in fact issued a Certificate of Judgment (the "May 10 COJ") on May 10, 2006, contemporaneously with the dismissal order, stating that Taylor's appeal had been dismissed and that "pursuant to Rule 41 of the Alabama Rules of Appellate Procedure and the order of dismissal, it is hereby certified that the aforesaid judgment is final." (Doc. 26, Exh. A.)  Taylor timely requested rehearing from the CCA by filing an application (the "Application for Rehearing") and supporting memorandum of law on May 24, 2006.  (R-83, R-

---

[2]        In so concluding, the CCA relied on the trial court's express finding of fact that the foreign attorney who signed the notice of appeal had not been admitted to represent Jarrod Taylor *pro hac vice* in this matter.  Reasoning that "any documents filed by a foreign attorney who has not been granted *pro hac vice* status are a nullity," the CCA opined that "the notice of appeal filed in this case is a legal nullity.  Because no effective notice of appeal was filed, this case is due to be dismissed."  (*Id.* at 2.)

84.)[3]  On May 31, 2006, the CCA overruled Taylor's Application for Rehearing without elaboration.  (R-125.)

Taylor's next move was to petition the Alabama Supreme Court for a writ of certiorari on June 14, 2006.  (R-85.)  The Alabama Supreme Court granted the petition and, on January 18, 2008, issued a ruling reversing the CCA's judgment and remanding to the CCA for further proceedings.  (R-126.)[4]  On February 6, 2008, the CCA issued an Order that recalled the May 10 COJ and restored Taylor's appeal to the CCA's active docket.  (Doc. 26, Exh. B.)

The state courts ultimately denied Taylor's Rule 32 petition on the merits, with the CCA issuing a final Certificate of Judgment on April 25, 2014.  (R-135.)  Taylor filed the instant Petition for Writ of Habeas Corpus by Prisoner in State Custody under Death Sentence (doc. 5) on September 22, 2014, exactly 150 days after issuance of the final Certificate of Judgment.

The State has now filed a Motion to Dismiss these § 2254 proceedings on the ground that Taylor's Petition was filed outside the applicable one-year limitations period.  The narrow legal question animating that Motion is whether the 14-day interval between the May 10 COJ and the Application for Rehearing counts against Taylor in the limitations calculus.  If it does not, then the State's timeliness objection melts away and this action may proceed with merits briefing on the dozens of grounds for relief articulated in the § 2254 Petition.  If it does, however, then the Petition was untimely filed and must be dismissed unless it is rescued by principles of equitable tolling.

---

[3]     In their briefs on the State's Motion to Dismiss, the parties spar over whether the Application for Rehearing was procedurally proper under the Alabama Rules of Appellate Procedure.  The Court need not decide this question because the State insists that its Motion to Dismiss is not predicated on a contention that the Application for Rehearing was improperly filed.  (Doc. 26, at 5 & n.3.)  Indeed, the State expressly "asked this Court to put aside the issue of whether Taylor's application for rehearing was 'properly filed' under AEDPA."  (Doc. 30, at 4.)  The Court grants this request and assumes (without deciding) for purposes of this Order that the Application for Rehearing was properly filed for purposes of an AEDPA timeliness analysis.

[4]     In so doing, the Alabama Supreme Court opined that "[t]o dismiss Taylor's appeal based on the peculiar facts in this case would be to elevate form over substance."  (R-126, at 9.)  The opinion further recognized that technical imperfections in a notice of appeal should not be fatal to the appeal where the notice is clear as to who is appealing, from what judgment and to which appellate court; and that a purported error relating to the *pro hac vice* admission status of the lawyer who signed the notice is readily curable.

## II.    Analysis.

The fundamental legal principles governing the Motion to Dismiss are both well-settled and undisputed.  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  Generally speaking, that one-year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A).  Here, everyone agrees that Taylor's AEDPA clock commenced running on January 7, 2002, when the U.S. Supreme Court denied his petition for writ of certiorari on direct appeal.

Of course, the AEDPA limitations period is subject to a statutory tolling provision, which stops the clock for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  The word "pending" embraces the entire term of the state-court postconviction review process until its completion.  As the Supreme Court explained, "an application is pending as long as the ordinary state collateral review process is 'in continuance' – *i.e.*, 'until the completion of' that process.  In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002).  Thus, "[t]he time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law."  *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006).[5]

---

[5]    *See also Kearse v. Secretary, Florida Dep't of Corrections*, 736 F.3d 1359, 1362 (11th Cir. 2013) ("Under AEDPA's statutory tolling provision, 'pending' includes the time between a lower court's decision and the filing of a notice of appeal to a higher state court."); *Wade v. Battle*, 379 F.3d 1254, 1262 (11th Cir. 2004) ("a state post-conviction application is 'pending' under § 2244(d)(2) both when it actually is being considered by the state habeas court and during the gap of time between the state habeas court's initial disposition and the petitioner's *timely* filing of a petition for review at the next level"); *Matos v. Secretary, Florida Dep't of Corrections*, 603 Fed.Appx. 763, 766 (11th Cir. Feb. 24, 2015) ("a petitioner's claim is 'pending' for the entire term of state court review, including those intervals between one state court's judgment and the filing of an appeal with a higher state court") (citation omitted); *Hollinger v.* (Continued)

The foregoing authorities illustrate the general rule that, in applying the tolling provision of § 2244(d)(2), "'Pending' refers to the continuation of the process, or the time until the process is completed. … The process is not complete until there is no other avenue the prisoner could pursue. Thus, the claim remains pending until the time to seek review expires." *Cramer v. Secretary, Dep't of Corrections*, 461 F.3d 1380, 1383 (11th Cir. 2006). Under a straightforward application of this rule, Taylor's Rule 32 petition was pending in Alabama courts, and the AEDPA period was tolled by operation of § 2244(d)(2), from the day he filed it (July 31, 2002) until the day the CCA issued its final Certificate of Judgment (April 25, 2014), such that this entire period would be tolled by operation of § 2244(d)(2).

In accordance with that analysis, the only time chargeable against the AEDPA limitations period for Taylor would be as follows: (i) the 205-day period between the conclusion of Taylor's direct appeal when the U.S. Supreme Court denied certiorari on January 7, 2002, and the filing of his Rule 32 Petition in Mobile County Circuit Court on July 31, 2002; and (ii) the 150-day period between the CCA's issuance of a final Certificate of Judgment on April 25, 2014, and Taylor's filing of his § 2254 Petition in this District Court on September 22, 2014. The total accrued time for purposes of the § 2244(d)(1) limitations period would be 355 days, meaning that Taylor's federal habeas petition would satisfy AEDPA's one-year filing deadline with 10 days to spare.

Notwithstanding the foregoing, the State maintains in its Motion to Dismiss that a third block of time must be charged against Taylor in the § 2244(d) timeliness calculus. Specifically, the State points to the 14-day period between the CCA's issuance of the initial Certificate of Judgment on May 10, 2006 (when the CCA deemed Taylor's notice of appeal to be a legal

---

*Secretary Dep't of Corrections*, 334 Fed.Appx. 302, 304 n.3 (11th Cir. June 26, 2009) ("A state post-conviction or collateral motion remains 'pending,' and thus tolls under § 2244(d)(2), for the time during which the petitioner could have appealed the denial of such motion, even if the petitioner did not file an appeal."); *Cox v. Ferrell*, 262 Fed.Appx. 147, 148 (11th Cir. Jan. 10, 2008) ("A petitioner's application for state post-conviction relief remains pending until the time expires to seek review of a state court decision in the next highest state court."); *see generally Lawrence v. Florida*, 549 U.S. 327, 332, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) ("After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open. And an application for state postconviction review no longer exists. … The application for state postconviction review is therefore not 'pending' after the state court's postconviction review is complete ….").

nullity because it was signed by a foreign lawyer who had not been admitted *pro hac vice*) and Taylor's filing of the Application for Rehearing on May 24, 2006.  In so doing, the State reasons that "[t]he certificate of judgment denotes the end of an appeal in state court" (doc. 26, at 3) and that "there is nothing 'pending' under AEDPA during time spent out of state court following a COJ, at least until something is filed again" (doc. 30, at 3).  If, as the State argues, § 2244(d)(2) tolling is not available for that 14-day period, then the total accrued time on Taylor's AEDPA clock would be 369 days (205 + 150 + 14) at the time he filed his § 2254 Petition, rendering the petition time-barred (unless equitable tolling applies) because it was filed outside the one-year limitations period.

The State's timeliness argument hinges on the CCA's decision on May 10, 2006 to issue a Certificate of Judgment contemporaneously with the order dismissing Taylor's appeal for a procedural defect in the notice of appeal.  In the State's view, entry of the May 10 COJ formally concluded Taylor's appeal of the denial of his Rule 32 petition, rendering his post-conviction proceedings "final" and triggering the resumption of the AEDPA clock.  Certainly, ample decisional authorities support the general notion that entry of a certificate of judgment by the Alabama Court of Criminal Appeals renders an appeal final.[6]  But that broad proposition is unilluminating in the context of Taylor's particular circumstances.  Regardless of what certificates of judgment might ordinarily mean in Alabama appellate practice, we know that the May 10 COJ did not mark the proverbial end of the road for Taylor's Rule 32 proceedings in state court.  We know that the process of Taylor's appeal from the Mobile County Circuit Court's dismissal of his Rule 32 petition continued onward in Alabama appellate courts for

---

[6]     *See, e.g., Taylor v. State*, 741 So.2d 458, 459 n.2 (Ala.Crim.App. 1999) ("Taylor's direct appeal became final on April 18, 1997, when this court issued the certificate of judgment on his direct appeal."); *Ex parte Hargett*, 772 So.2d 481, 481-82 (Ala.Crim.App. 1999) ("This Court issued a certificate of judgment on April 13, 1999, at which time the appeal was final."); *Robinson v. State*, 629 So.2d 3, 4 (Ala.Crim.App. 1993) ("A judgment of the Court of Criminal Appeals is not final until that court issues its certificate of judgment.") (citation omitted); *Ealy v. Ferrell*, 2012 WL 642070, *2 (M.D. Ala. Feb. 8, 2012) ("Petitioner's Rule 32 proceedings became final on November 5, 2008, when the Alabama Court of Criminal Appeals issued a certificate of judgment."); *Mays v. McDonnell*, 2006 WL 2927474, *4 (M.D. Ala. Oct. 12, 2006) ("This state post-conviction petition remained pending in the state courts until final resolution occurred upon issuance of the certificate of judgment by the Alabama Court of Criminal Appeals on November 6, 2001.").

nearly eight years after issuance of the May 10 COJ until it was finally completed.  Under any reasonable view of the relevant procedural history, Taylor's state postconviction proceedings did not conclude with the entry of the May 10 COJ; therefore, it is counterfactual to argue, as the State does, that Taylor's appeal of the lower court's dismissal of his Rule 32 petition was completed on May 10, 2006.

Recall the Eleventh Circuit's explanation that a claim is "pending" for § 2244(d)(2) purposes "until the process is completed" and that "[t]he process is not complete ***until there is no other avenue the prisoner could pursue***." *Cramer*, 461 F.3d at 1383 (emphasis added). Contrary to the State's position, the May 10 COJ did not seal off all possible avenues for Taylor to move forward with his existing appeal.[7]  The Alabama Court of Criminal Appeals did not prohibit Taylor from filing an application for rehearing pursuant to Rule 40(a), Ala.R.App.P. Nor did the CCA eliminate the 14-day period authorized by Rule 40(c) for Taylor to submit such an application.  Likewise, the CCA did not specify that Taylor was forbidden from seeking further review by filing a petition for writ of certiorari from the Alabama Supreme Court pursuant to Rule 39(c), Ala.R.App.P., within 14 days after denial of his application for rehearing (a prerequisite to requesting Alabama Supreme Court review).  Thus, issuance of the May 10 COJ did not create a circumstance in which Taylor was out of options to move forward with his existing appeal.  Avenues were open to him to keep the appeal going.  He could file a timely application for rehearing with the CCA, which he did.  He could then timely seek Alabama Supreme Court review, which he did.  The proof is in the pudding.  We know that Taylor's appellate process did not become complete on May 10, 2006 with the issuance of the first

---

[7]  The State argues that, upon issuance of the May 10 COJ, Taylor's appeal was over and his only possible remedy was to attempt to initiate a new, out-of-time appeal pursuant to Rule 32.1(f), Ala.R.Crim.P.  Had Taylor gone that route – which he did not – the State might have a convincing argument that the temporal gap between the termination of one appeal and the commencement of a second, brand-new, out-of-time appeal should not be tolled under § 2244(d)(2) because nothing would have been "pending" during that interval.  *See generally Moore v. Crosby*, 321 F.3d 1377, 1380 (11th Cir. 2003) (recognizing that "an out-of-time appeal does not revive the time during which no state collateral petition was pending before the state court").  However, this line of inquiry is entirely hypothetical because Taylor never gave up on his existing Rule 32 appeal and never sought to commence a second, out-of-time appeal.  He brought one collateral appeal, and one collateral appeal only.  That singular appeal spanned from 2005 to April 2014, when the process was finally completed.

Certificate of Judgment because he successfully pursued other avenues to keep the existing appeal (as opposed to a new, later-filed appeal) of the denial of his Rule 32 petition active, ongoing and continuing for many years thereafter.[8]

The point to all of this is that neither Taylor's conduct nor that of Alabama's higher courts supports a conclusion that Taylor had no other avenues available to continue litigating his existing appeal upon entry of the May 10 COJ.  The avenue that Taylor did pursue was filing an application for rehearing pursuant to Rule 40(a), as a mandatory prelude to seeking Alabama Supreme Court review.  There being no indication in the record, in the Alabama Rules of Appellate Procedure, or in any authorities cited by the State that such an avenue was unavailable to Taylor, as a matter of law, his Rule 32 proceedings plainly remained "pending" for purposes of § 2244(d)(2) throughout that period.  More precisely, Alabama procedural rules allowed

---

[8]     In arguing that the May 10 COJ actually did conclude Taylor's appeal (at least, until he filed an application for rehearing on May 24, 2006), the State argues that Taylor was "proceeding outside the purview of the Alabama Rules of Appellate Procedure" by requesting rehearing.  (Doc. 26, at 5.)  But the State points to no authority that would bar Taylor from filing an application for rehearing and, eventually, a petition for writ of certiorari to the Alabama Supreme Court following the May 10 COJ.  The State has not shown that the CCA's decision to dismiss Taylor's appeal as a legal nullity was unappealable, as a matter of Alabama law and procedure.  It has offered no convincing argument that the Rule 40(a) application for rehearing procedure was unavailable to Taylor, as a matter of law.  Again, the conduct of the CCA and the Alabama Supreme Court reflects otherwise.  If Alabama procedure did not allow Taylor to seek rehearing, then surely the CCA would neither have allowed him to file such an application nor considered same.  But it did.  If Taylor's application for rehearing were procedurally improper, then surely the Alabama Supreme Court would have summarily rejected his subsequent petition for writ of certiorari (which, by operation of Rule 39(c)(1), was necessarily predicated on that application for rehearing).  But it did not.  The State attempts to explain away the Alabama Supreme Court's handling of the case by saying that it must have "overlooked his procedural missteps."  (Doc. 30, at 7.)  The suggestion that the Alabama Supreme Court would have granted Taylor's petition for writ of certiorari, reversed the CCA's judgment, and remanded his case to the CCA, if Taylor's petition were in violation of (or "outside the purview of") the Alabama Rules of Appellate Procedure strains credulity.  According to the State, the Alabama Supreme Court granted Taylor a remedy for a petition that he was not allowed to file in the first place, even though (again) the State points to no law, no rule and no case that would have barred Taylor from filing such a petition.  The Court declines to endorse such reasoning.  Rather, if the Alabama Supreme Court granted Taylor a remedy, it must have concluded that Taylor had a right to request that remedy in the first place.  That procedural right to request further review equates to the very avenue Taylor pursued to keep his appeal afloat, and therefore "pending" for purposes of AEDPA tolling.

Taylor a window of 14 days to seek rehearing from the CCA's ruling of July 10, 2006.  *See* Rule 40(c), Ala.R.App.P.  That 14-day window coincides with the period between the CCA's dismissal of Taylor's appeal on July 10 and Taylor's filing of an application for rehearing on July 24.  Pursuant to the *Cramer* line of authorities, Taylor's existing appeal was "in continuance" during the time period in which he could file an application for rehearing under Rule 40.  Thus, this 14-day window falls within the expansive definition of "pending" for purposes of AEDPA's statutory tolling provision, and those 14 days are properly tolled from the one-year limitations period by operation of 28 U.S.C. § 2244(d)(2).  If those 14 days are excluded, then Taylor filed his § 2254 Petition after 355 days of chargeable time.  Accordingly, his federal habeas petition satisfies the AEDPA one-year filing requirement, and is timely.

**III.   Conclusion.**

For all of the foregoing reasons, the Respondent's Motion to Dismiss Untimely Petition (doc. 26) is **denied**.  With this ruling, the stay of other deadlines entered via Order (doc. 27) dated February 5, 2015 is hereby **lifted**.  It is **ordered** that Respondent's Answer to the Amended Petition must be filed on or before **October 28, 2015**.  It is further **ordered** that each party is to submit a courtesy hard copy of its pleadings to the undersigned's chambers on or before **November 4, 2015**.

DONE and ORDERED this 28th day of August, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE