# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JARROD TAYLOR,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 14-0439-WS-N** |
| ) | |
| **JEFFERSON S. DUNN, Commissioner,** ) | |
| **Alabama Department of Corrections,** ) | |
| ) | |
| **Respondent.** ) | |

## ORDER

This closed death-penalty habeas matter comes before the Court on Petitioner's Motion to Alter or Amend the Court's Judgment Dismissing the Amended Petition for Writ of Habeas Corpus (doc. 52).

## I.    Procedural Background.

On January 25, 2018, the undersigned entered a comprehensive 147-page Order (doc. 50) and Judgment (doc. 51) denying Jarrod Taylor's Amended Petition for Writ of Habeas Corpus by Prisoner in State Custody under Death Sentence (doc. 25), in its entirety.  The January 25 rulings also denied a certificate of appealability ("COA") on all claims, grounds and issues presented.

Taylor now moves for reconsideration of five specifically enumerated aspects of the January 25 Order and Judgment.  In particular, Taylor requests the following relief: (i) reconsideration of the finding that Claim III.B.i.b (ineffective assistance of trial counsel for failure to investigate alibi evidence from Steve "Blue" Blackmon) is not exhausted; (ii) reconsideration of the findings that Claim III.C (penalty-phase ineffective assistance of counsel) is procedurally barred and that petitioner failed to demonstrate prejudice resulting from any deficient performance; (iii) reconsideration of the finding that Claim III.B.ii.a (ineffective assistance of trial counsel for failure to challenge admission of a duffel bag, wallet, and purse) is procedurally barred; (iv) issuance of a COA as to whether *Hurst v. Florida* applies retroactively to Taylor's case; and (v) issuance of a COA on whether disallowed claims from Taylor's Second Amended Rule 32 Petition and Revised Second Amended Rule 32 Petition are procedurally

defaulted and on the related Claim X (violation of due process and fundamental fairness because Alabama courts ostensibly did not allow Taylor a fair opportunity to litigate his claims).

## II. Analysis.

### A. Legal Standard for Motion to Reconsider.

Taylor's Motion to Alter or Amend is governed by Rule 59(e) of the Federal Rules of Civil Procedure. As a matter of well-settled law, a dissatisfied federal litigant is not entitled to reconsideration of anything and everything, merely because he disagrees with a court's decision. To the contrary, "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) (citation and internal marks omitted); *see also Hamilton v. Secretary, Florida Dep't of Corrections*, 793 F.3d 1261, 1266 (11th Cir. 2015) ("A Rule 59(e) motion can be granted based only on 'newly-discovered evidence or manifest errors of law or fact.'") (citation omitted). To prevail on a Rule 59(e) motion, "[t]he losing party must do more than show that a grant of the motion might have been warranted; he must demonstrate a justification for relief so compelling that the district court was required to grant the motion." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012) (citations and internal marks omitted); *see also Kolawole v. Sellers*, 863 F.3d 1361, 1372 (11th Cir. 2017) (similar).

Authority is legion for the proposition that motions to reconsider under Rule 59 "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation omitted).[1] Rule 59(e) does not afford an unsuccessful litigant "two bites at the apple." *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985). Nor are such motions properly filed "as a kneejerk reaction by a dissatisfied federal court loser." *Lee v. Thomas*, 2012 WL 3137901, *2 (S.D. Ala. Aug. 1, 2012); *see also Hughes v. Stryker Sales Corp.*, 2010 WL 2608957, *2 (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the

---

[1]       *See also United States Equal Employment Opportunity Commission v. St. Joseph's Hospital, Inc.*, 842 F.3d 1333, 1349 (11th Cir. 2016) ("motions under Rule 59(e) may not be used to raise new legal theories or arguments"); *Hamilton*, 793 F.3d at 1266-67 ("It is established beyond dispute that Rule 59(e) cannot be used to raise arguments or present evidence that could have been raised prior to the entry of judgment.") (citation and internal marks omitted).

losing party thinks the District Court got it wrong"). "They are neither appeal substitutes nor a 'dry run' to test arguments in anticipation of a forthcoming appeal." *Lee*, 2012 WL 3137901, at *2.

These black-letter principles guide and inform the undersigned's analysis of Taylor's Motion to Alter or Amend Judgment.

### B. Claim III.B.i.b (Ineffective Assistance as to Witness "Blue").

Petitioner's first ground for seeking relief under Rule 59(e) relates to Claim III.B.i.b. In this claim, which consumes four pages of his § 2254 Petition, Taylor alleged that trial counsel furnished ineffective assistance by failing to locate and interview a witness named Steve "Blue" Blackmon. (Doc. 25, ¶¶ 154-60.) According to the § 2254 Petition, Blackmon would have testified that Taylor, driving a new Mustang, arrived at the apartment complex where Blackmon lived shortly after 7:00 p.m. on the night of the murders, that Taylor and Blackmon spoke for 30-45 minutes, and that Blackmon never saw McMillan during that interval. (*Id.*, ¶ 155.) The gravamen of Claim III.B.i.b was that Blackmon's testimony would have (i) "tended to establish that Mr. Taylor was not present at the dealership at the time of the murders," because gunshots were heard at 6:50 p.m. and the apartment complex was a six-minute drive from the murder location; (ii) "contradicted Mr. McMillan's claim that he arrived at Ms. Matthews's home at the same time as Mr. Taylor;" and (iii) rebutted Doneisha Matthews' "clearly unreliable" testimony "that Mr. McMillan arrived approximately 5-15 minutes after Mr. Taylor." (*Id.*, ¶¶ 156-57.)

In the January 25 Order, this Court found that Claim III.B.i.b was not exhausted. (Doc. 50, at 76-77.) In so concluding, the Court emphasized the marked difference between the "Blue" ineffective assistance claim as presented to state courts in Taylor's Rule 32 Petition and that articulated in his § 2254 Petition. Indeed, the ineffective assistance claim that Taylor raised to the state courts relating to "Blue" was framed as follows:

> "[Doneisha] Matthews testified that Mr. Taylor arrived at her home, alone, in the Mustang, between 6:00 and 6:10 p.m. … She said that she called her neighbor, 'Blue,' and that he came over to speak with Mr. Taylor. … According to Matthews' testimony, McMillan arrived approximately 5-15 minutes after Mr. Taylor …. In contrast, McMillan claims he arrived at Matthews' home within 3-5 minutes of Mr. Taylor and that Mr. Taylor was just getting out of the Mustang …. ***Upon information and belief, trial counsel made no effort to locate and interview 'Blue' to verify Matthews's version of the events***."

(Vol. 22, R-56, at ¶ 143 (emphasis added).) Upon a side-by-side comparison of the ineffective assistance claim presented in Paragraph 143 of Taylor's Corrected First Amended Rule 32

Petition, and that presented in Claim III.B.i.b of his § 2254 Petition, this Court determined that the claim had not been fairly presented to the state courts and that it therefore was not exhausted. On its face, petitioner's theory in the Rule 32 proceedings was vastly different from that in the § 2254 Petition. Indeed, Taylor argued to the state courts that his trial counsel was ineffective in not locating Blackmon because Blackmon would have "verified" Doneisha Matthews' trial testimony (as compared to that of McMillan) that Taylor had arrived in the Mustang between 6:00 and 6:10 p.m., and that McMillan had arrived 5-15 minutes later. By contrast, Claim III.B.i.b in these federal habeas proceedings was that trial counsel was ineffective in not locating Blackmon because Blackmon would have undercut the trial testimony of Matthews as to both the time of Taylor's arrival and McMillan's presence or lack thereof.

The divergence between the character of these claims is so great that they are, for all practical purposes, fundamentally different. Thus, the January 25 Order concluded that Claim III.B.i.b was not exhausted because it flunked the "fair presentment" requirement that the petitioner "present his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270 (11th Cir. 2015) (citation and internal quotation marks omitted). Given the obvious, bedrock differences between Claim III.B.i.b and the "Blue" ineffective-assistance claim set forth in Taylor's Corrected First Amended Rule 32 Petition, it was not error (much less manifest error) for the January 25 Order to conclude that the claim was not exhausted because the fair presentment requirement was not satisfied.[2]

---

[2]     Taylor's arguments to the contrary are not persuasive. First, Taylor characterizes his federal Claim III.B.i.b as merely providing "additional allegations" that did not "fundamentally alter the legal claim already considered by the state courts." (Doc. 53, at 5-6 n.3.) The Court disagrees. Far from merely elaborating on the claim presented in his Rule 32 petition, Taylor revamped it into something entirely different in his § 2254 Petition; therefore, the authority cited in footnote 3 of the brief supporting his Rule 59(e) Motion is inapposite. Second, Taylor cites authority for the proposition that the entire state court record must be reviewed in order to evaluate exhaustion. (Doc. 53, at 7.) Petitioner is correct that the Eleventh Circuit has written those words. *See Roberts v. Commissioner, Alabama Dep't of Corrections*, 677 F.3d 1086, 1090 (11th Cir. 2012) ("In order to determine whether a claim has been exhausted, we look to the entire state court record and not just the state court's order ...."). But he is not correct that a Rule 32 petitioner may *de facto* amend his petition (and thereby circumvent restrictions imposed by state courts on such amendments) through the expedient of dumping facts in the record at an evidentiary hearing and encumbering state courts with the burden of conjuring up unpleaded (and perhaps even disallowed) claims and theories to which (Continued)

-4-

More importantly, Taylor's exhaustion argument as it relates to Claim III.B.i.b is inconsequential. Even if he were correct as to exhaustion (which he is not), Taylor still would not be entitled to relief on Claim III.B.i.b. After all, the January 25 Order made a clear alternative finding that Claim III.B.i.b failed on the merits. *See* doc. 50, at 77 n.69 ("Taylor is not entitled to habeas relief on Claim III.B.i.b even if that claim is viewed as properly exhausted, in whole or in part, because the state courts did not err in applying *Strickland* to the facts of this case."). Notably, Taylor's Rule 59(e) Motion does not seek reconsideration of, and does not ascribe error to, that alternative, merits-based adjudication of Claim III.B.i.b. Thus, even if he could prevail on the procedural issue, Taylor would not be entitled to modification or amendment of the January 25 Order and Judgment as they relate to Claim III.B.i.b.

For all of the foregoing reasons, Taylor's Motion to Amend or Correct is **denied** as Claim III.B.i.b, and no COA is warranted as to that claim for relief.

### C. Claim III.C (Ineffective Assistance at Penalty Phase).

Petitioner's second ground for Rule 59(e) relief concerns Claim III.C. Taylor devoted 42 pages and 92 paragraphs of his § 2254 Petition to Claim III.C, which is labeled "Trial Counsel Failed to Provide Effective Assistance During the Penalty Phase" (doc. 25, at 115), and documents a litany of purported deficiencies by Taylor's counsel. By comparison, Taylor's penalty-phase ineffective assistance claim in his Corrected First Amended Rule 32 Petition consisted of a scant six pages and 14 paragraphs. (Vol. 22, R-56, at ¶¶ 162-175.) There were significant procedural defects with Claim III.C, as pleaded.

The January 25 Order concluded that Taylor had failed to present many aspects of Claim III.C to the state courts in his Corrected First Amended Rule 32 Petition, that those portions of Claim III.C raised for the first time in his disallowed Second Amended Rule 32 Petition were procedurally defaulted because the state courts had rejected them on an adequate and independent state procedural ground, and that Taylor had failed to satisfy his burden of showing

---

they might apply. Simply put, Taylor told the Alabama state courts in his Corrected First Amended Rule 32 Petition that his claim was that trial counsel provided ineffective assistance by failing to locate "Blue" to "verify" Doneisha Matthews' story. He never told the state courts that his claim was actually that trial counsel were ineffective in failing to locate "Blue" to discredit Matthews. The latter iteration of this claim was never fairly presented to the state courts, and therefore was not exhausted.

cause to excuse the procedural default. *See* doc. 50, at 24-25, 41, 63 ("Inasmuch as Taylor has failed to show cause to excuse the procedural default, the ineffective assistance claims embedded within Claim III.C of his § 2254 Petition cannot be heard herein to the extent the state courts deemed them procedurally barred as having been presented for the first time in his [disallowed] Second Amended R32 Petition."). Because Taylor maintained these claims were adequately presented in a prior iteration of his Rule 32 petition, the January 25 Order went on to catalog 16 distinct subparts to Claim III.C. Twelve "were not exhausted in the Alabama courts in the Rule 32 proceedings because they are inadequately presented (if they were even presented at all) in the Corrected First Amended R32 Petition" (doc. 50, at 98). Three of the remaining subparts were barred from federal habeas review under the "adequate and independent state procedural ground" doctrine, in that "the Alabama Court of Criminal Appeals declined to consider those issues on the merits because Taylor's appellate brief did not comply with the requirements of Rule 28(a)(10)." (*Id.* at 100.) As to the 16th and final subpart of Claim III.C (which alleged ineffective assistance of counsel in failing to elicit testimony from Taylor as to the definition of "misprision of a felony"), the January 25 Order rejected that subclaim on the merits, concluding that there was nothing objectively unreasonable in the state courts' application of *Strickland* principles to it. (*Id.* at 101-02.) In a lengthy footnote, the January 25 Order expressly made an alternative finding that even if the other subclaims of Claim III.C were not procedurally barred (which they were), Taylor would not be entitled to relief on that claim because (i) his lawyers' effectiveness at the sentencing stage was strongly evidenced by the jury's decision to recommend life without parole, and (ii) at any rate, petitioner had failed to show *Strickland* prejudice arising from any deficiencies in counsel's penalty-phase performance. (Doc. 50, at 102-04 n.96.)

In seeking to alter or amend the January 25 Order and Judgment as they relate to Claim III.C, Taylor identifies four grounds for reconsideration, to-wit: (i) this Court violated Eleventh Circuit precedent by considering exhaustion and procedural default on a subclaim-by-subclaim basis, rather than for Claim III.C as a whole; (ii) this Court erred because Taylor's Rule 32 penalty-phase ineffective assistance claim was adequate to present the substance of Claim III.C to the state courts; (iii) this Court's exhaustion analysis was erroneous because it failed to consider the entire state court record as required by the Eleventh Circuit; and (iv) the Court's

*Strickland* prejudice analysis "overlooked important and binding Eleventh Circuit law." (Doc. 53, at 7.) Each of these assignments of purported manifest error will be addressed in turn.

As an initial matter, Taylor decries the January 25 Order's application of exhaustion / procedural default on a subclaim-by-subclaim basis as being contrary to law, declaring that "[t]he Eleventh Circuit … has proscribed exactly this approach." (Doc. 53, at 8.) Despite this stern rhetoric, Taylor identifies not a single decision from this (or any other) Circuit holding that all aspects of a penalty-phase ineffective assistance claim are exhausted so long as the petitioner has presented <u>any</u> portion of it to the state courts.[3]  In fact, abundant binding authority refutes Taylor's assertion. *See, e.g., Williams v. Allen*, 458 F.3d 1233, 1239 (11th Cir. 2006) ("In state court, Williams did not raise a penalty phase ineffectiveness claim regarding counsel's failure to read and review the Taylor Hardin report.  Rather, Williams's claim of ineffectiveness at sentencing related to counsel's failure to investigate and present sufficient mitigation evidence …. [T]he specific issue raised here was never fairly presented to the state courts.  As such, the claim is precluded from federal review.").[4]

---

[3]        At most, Taylor cites Eleventh Circuit precedent explaining that courts must "consider the prejudicial effect of trial counsel's deficient performance based on the totality of available mitigating evidence," because "the combined effect of all mitigating evidence in producing a different outcome at sentencing" is what matters for a *Strickland* prejudice analysis. *Daniel v. Commissioner, Alabama Dep't of Corrections*, 822 F.3d 1248, 1277-78 (11th Cir. 2016) (citations and internal quotation marks omitted).  This authority lends no support to Taylor's premise.  To recognize that all mitigating evidence must be considered for purposes of a *Strickland* prejudice analysis (as *Daniel* did) is not to say that an entire 16-part penalty-phase ineffective-assistance claim in a § 2254 petition satisfies the "fair presentment" requirement so long as even one of those 16 parts was identified in state post-conviction proceedings.  Nothing in *Daniel* relaxes or dispenses with the "fair presentment" rule in the penalty-phase ineffective assistance context.  As for Taylor's insistence that requiring him to present each of the Claim III.C subclaims to the state courts "would make no sense, and create enormous confusion" (doc. 53, at 8 n.4), the Court submits that what would make no sense and create enormous confusion would be to exempt penalty-phase ineffective assistance claims from strict compliance with fundamental exhaustion rules that apply to every single other constitutional claim for federal habeas relief.  Contrary to Taylor's suggestion, the law does not countenance habeas petitioners raising myriad alleged penalty-phase deficiencies by trial counsel for the first time in federal court as long as they mentioned at least one such deficiency in their state post-conviction petitions.

[4]        *See also Ogle v. Johnson*, 488 F.3d 1364, 1368 (11th Cir. 2007) ("[t]o have exhausted these eight claims, Ogle had to present the eight instances of ineffective assistance that he now asserts in his federal petition" to the state habeas court in a manner that satisfied fair (Continued)

Next, Taylor posits that the January 25 Order misapplied procedural bar and exhaustion principles to Claim III.C because "[c]onsidered as a whole, Mr. Taylor fairly presented to the state courts, with the requisite specificity, his claim that trial counsel failed to provide effective assistance during the penalty phase." (Doc. 53, at 9.) However, the January 25 Order explained in detail why, upon side-by-side comparison of Taylor's federal petition with his state petition, the fair presentment requirement was not satisfied with respect to numerous subclaims set forth in Claim III.C. (*See* doc. 50, at 97-99 & n. 92.) In so doing, the January 25 Order hewed closely to the Eleventh Circuit's admonition that, to satisfy exhaustion principles, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *French*, 790 F.3d at 1271 (citation omitted). In his Rule 59(e) Motion, Taylor does not challenge the reasoning of the January 25 Order on this point, nor does he address specific subclaims to show how they were fairly presented to the state courts. Instead, Taylor merely offers sweeping generalizations, cursory references to buzzwords at a high level of abstraction, and his position that "considered together" there were enough facts pleaded to exhaust Claim III.C "as a whole." (Doc. 53, at 9-10.) Once again, Taylor proceeds under the incorrect premise that so long as his penalty-phase ineffective assistance claim is exhausted in its most generic form, then all 16 subclaims must be considered on the merits for § 2254 purposes regardless of whether those specific issues were ever raised in state court. As discussed *supra*, binding precedent is to the contrary. Most of the subclaims in Claim III.C were first presented to the state courts (if at all) via Taylor's disallowed Second Amended Rule 32 Petition, which the

---

presentment); *Peoples v. Campbell*, 377 F.3d 1208, 1239 (11th Cir. 2004) ("allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's 'full and fair opportunity to address the claim on the merits'") (citation omitted); *Johnston v. Singletary*, 162 F.3d 630, 635 (11th Cir. 1998) ("Because Johnston did not raise this specific allegation of ineffective assistance in any state court proceeding, our circuit precedent dictates that the claim is procedurally barred."); *Jackson v. Herring*, 42 F.3d 1350, 1355 (11th Cir. 1995) ("habeas petitioners generally may not raise ineffective assistance of counsel claims except on grounds specifically presented to the state courts"); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("we agree with the district court's statement of the law that a habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously").

Alabama courts rejected on the basis of an adequate and independent state ground; therefore, those claims are procedurally defaulted. Insofar as Taylor contends these subclaims were exhausted in his Corrected First Amended Rule 32 Petition, the January 25 Order explains in some detail why that assertion is unavailing.[5]

As another basis for seeking Rule 59(e) relief relating to Claim III.C, Taylor faults the January 25 Order's exhaustion/procedural default analysis for failing to consider "a twenty-two page proffer (plus exhibits) that Mr. Taylor filed in the Circuit Court in connection with the Rule 32 hearing, which detailed at length the testimony that witnesses … would have offered in support of his claim that trial counsel failed to provide effective assistance during the penalty phase." (Doc. 53, at 10-11.)[6] The circumstances of that proffer belie Taylor's argument. Recall that in October 2010, the Alabama Court of Criminal Appeals ordered a limited remand of Taylor's Rule 32 proceedings to the Mobile County Circuit Court. Nearly a year after remand, in September 2011, Taylor attempted to file a Second Amended Rule 32 Petition which would have added for the first time many of the subparts later found in Claim III.C of his § 2254 Petition; however, the state court refused to allow the amendment based on an adequate state procedural ground (*i.e.*, that the Circuit Court lacked jurisdiction to hear any claims other than those embodied in the Court of Criminal Appeals' limited remand). The Circuit Court set the matter for Rule 32 evidentiary hearing on those remanded claims. Shortly before that hearing, Judge

---

[5]       Taylor endeavors to advance a third variant of this argument in his Rule 59(e) Motion by positing that "[t]he additional allegations in the Federal Petition … did not fundamentally alter the legal claim that trial counsel provided ineffective assistance during the penalty phase." (Doc. 53, at 13.) This reasoning fails for the same reasons and pursuant to the same authorities discussed *supra*. It is not enough for exhaustion purposes to plead a generic penalty-phase ineffective assistance claim in state court, then attempt in federal habeas review to fill in details of specific instances of ineffective assistance that were never pleaded as grounds for relief in state court. And again, all of those subclaims that were raised for the first time in Taylor's Second Amended Rule 32 Petition were disallowed by state courts pursuant to an adequate, independent state procedural ground, rendering them procedurally defaulted.

[6]       The Rule 59(e) Motion marks the first occasion that Taylor has ever identified the 22-page proffer in these § 2254 proceedings. To the best of the undersigned's knowledge, Taylor did not cite, much less highlight, the proffer in his 297-page Amended § 2254 Petition (doc. 25) or in his 72-page Reply (doc. 43). Yet he is now apparently arguing that it was a "manifest error of fact or law" for this Court not to locate, review and evaluate *sua sponte* this exhibit secreted in the 59-volume state court record.

Youngpeter entered an Order on December 7, 2011, excluding some 20 designated defense witnesses from testifying on the ground that "those witnesses due to be excluded can offer no testimony relevant to the limited set of claims and issues this Court has been directed to address on remand by the Court of Criminal Appeals." (Vol. 37, at 41.) In the wake of that ruling, Taylor filed a 22-page proffer (plus exhibits) documenting what those witnesses would have said had Taylor been allowed to present their testimony (which he was not). (Vol. 38, at 293-314.) This proffer concerned claims from Taylor's disallowed Second Amended Rule 32 Petition, many of which Taylor later attempted to resuscitate as subparts of Claim III.C his § 2254 Petition.[7] As stated, the January 25 Order and Judgment rejected such subclaims on grounds of exhaustion and/or procedural default.

The point of reciting the procedural history concerning the December 2011 proffer is straightforward, to-wit: The "new" subclaims of penalty-phase ineffective assistance presented in Taylor's Second Amended Rule 32 Petition were procedurally defaulted. The universe of penalty-phase ineffective assistance claims properly before the state court were those set forth in Taylor's First Amended Rule 32 Petition, which omitted numerous subclaims that later surfaced in Claim III.C of his § 2254 Petition. The 22-page proffer does not unilaterally expand the universe of penalty-phase ineffective assistance claims that Taylor presented to the state courts. It does not and cannot effectuate an end-run around the state court's procedural ruling that disallowed those very subclaims. It neither lifts the taint of procedural default from those subclaims, nor alters the exhaustion analysis as it pertains to the scope of the penalty-phase ineffective assistance claim that the state courts did allow. Thus, the Court finds that the December 2011 proffer does not undo the state courts' procedural rulings, eradicate the procedural default, or expand the subset of penalty-phase ineffective assistance claims that Taylor could properly litigate in these § 2254 proceedings. Simply put, the December 2011 proffer does not afford Taylor a viable basis for Rule 59(e) relief.

All of Taylor's present arguments relating to exhaustion and procedural default of the various subclaims in Claim III.C fail for another reason. In the alternative to rejecting those

_____

[7]     Taylor acknowledges the "extremely close nexus between the information in the proffer and the factual allegations supporting Claim III.C of the Federal Petition" (doc. 53, at 12), and in particular the subclaims of Claim III.C that the January 25 Order denied on grounds of procedural default / exhaustion.

subclaims on procedural grounds, the January 25 Order and Judgment expressly considered the merits of petitioner's penalty-phase ineffective assistance claims. (Doc. 50, at 102-04 n.96.) That merits analysis concluded that "no relief would be warranted on Claim III.C even if it were properly considered on the merits in its entirety." (*Id.* at 104 n.96.) Taylor takes issue with that ruling in several respects. He mischaracterizes the January 25 Order as wrongfully attributing the omission of certain mitigation evidence to a "strategic decision" by trial counsel. (Doc. 53, at 13-14.) It did no such thing. The point made in the Order was not that trial counsel consciously elected to exclude the facts in question, but was instead that (i) many of the facts Taylor now says his counsel should have elicited in his mitigation case would have clashed with, been inconsistent with, or undermined facts in the mitigation case that counsel actually presented; and (ii) the mitigation case presented was reasonably effective as demonstrated by the fact that the jury recommended life without parole. (Doc. 50, at 103 n.96.)[8] This is a *Strickland* prejudice issue, not a deficient-performance issue as Taylor now attempts to frame it.

Taylor also says the January 25 Order's finding that trial counsel had employed "a sound, effective, prudent mitigation case" (doc. 50, at 102 n.96) failed to appreciate his contention that trial counsel were ineffective "because they failed to conduct an adequate investigation that would have enabled them to make strategic decisions." (Doc. 53, at 15.) Taylor's argument is apparently that he must have been prejudiced because his lawyers failed to conduct what he thinks is an adequate investigation to allow them to make "strategic decisions." That theory was

---

[8] An example cited in the January 25 Order illustrates the point. Taylor's Claim III.C asserts that counsel was ineffective in the penalty phase for not presenting evidence that Taylor's mother was "abusive" and "cruel" to him because (for example) she locked her children inside the house when she was not home to keep them safe in a dangerous neighborhood, and she "held unreasonably high expectations" of them. (Doc. 25, ¶¶ 287-90.) Leaving aside the fact that the allegations presented in that claim evince no such cruelty, the January 25 Order made the point that trial counsel utilized a penalty-phase strategy "emphasizing defendant's loving family and close relationship with his mother, who testified to that effect in the penalty phase as she pleaded with the jury to spare her son's life. To demonize Taylor's mother, as Taylor now says his lawyers should have done, would have been to sabotage that effective mitigation strategy." (Doc. 50, at 103 n.96.) Again, the January 25 Order did not conclude that trial counsel made a strategic decision to steer clear of a "cruelty" theory as to Taylor's mother, or even that counsel was aware of any "cruelty," assuming it existed. Rather, the January 25 Order concluded that trial counsel effectively used a "loving family" strategy as to Taylor's mother to beg for his life and that Taylor did not suffer *Strickland* prejudice from counsel's failure to portray his mother as cruel and abusive toward her son, as he now argues counsel should have done.

expressly debunked by the January 25 Order and in Eleventh Circuit jurisprudence. *See, e.g., Borden v. Allen*, 646 F.3d 785, 819 (11th Cir. 2011) ("We think it important to note here that a counsel's failure to satisfactorily investigate potential mitigating factors does *not* give rise to a presumption of prejudice."). To evaluate *Strickland* prejudice, courts "weigh this aggravating evidence against the evidence presented at mitigation, along with the new evidence that could have been presented at mitigation." *Brown v. United States*, 720 F.3d 1316, 1327 (11th Cir. 2013). The point the January 25 Order was making was that trial counsel presented a sound, effective mitigation case on Taylor's behalf; that the additional mitigation evidence that Taylor now says his lawyers would have found if they had conducted an adequate investigation would have added little because such evidence was "weak, speculative, cumulative or inconsistent" with the evidence that was effectively presented; and that Taylor had not proven a reasonable probability that, upon reweighing the aggravating and mitigating circumstances and factoring in the "new" mitigation evidence that Taylor says counsel should have excavated, the sentencing judge would have arrived at a different conclusion, as needed to show *Strickland* prejudice. (Doc. 50, at 103-04 n.96.) Nothing in Taylor's Rule 59(e) Motion exposes this determination as a manifest error of law or fact.[9]

---

[9]     Nor does Taylor strengthen his case under Rule 59(e) by highlighting what he characterizes as the January 25 Order's "suggestion that a petitioner in a jury override case cannot show prejudice on a claim that trial counsel were ineffective during the penalty phase." (Doc. 53, at 15.) A fair reading of the *Strickland* prejudice analysis presented in footnote 96 of the January 25 Order belies this objection. Nowhere does the January 25 Order embrace a categorical rule that *Strickland* prejudice is unavailable as a matter of law in an override case where the jury recommends life. Instead, the January 25 Order simply observed that the jury's recommendation reinforced a conclusion that trial counsel had presented an effective mitigation case on Taylor's behalf. (Doc. 50, at 102 n.96 ("On its face, this appears to be a sound, effective, prudent mitigation case. That assessment is reinforced by the fact that the jury recommended life, not death.").) The Eleventh Circuit has said the same thing. *See Tarver v. Hopper*, 169 F.3d 710, 715 (11th Cir. 1999) ("Tarver's lawyer's effectiveness at the sentencing stage is strongly evidenced by the jury's decision to recommend not death, but life without parole."). Besides, on multiple occasions the Eleventh Circuit has highlighted the difficulties of showing *Strickland* prejudice in override cases in which the jury recommends life. *See, e.g., Lee v. Commissioner, Alabama Dep't of Corrections*, 726 F.3d 1172, 1196 (11th Cir. 2013) ("the fact that the jury recommended life imprisonment counsels against a determination that Lee was prejudiced under *Strickland*"); *Parker v. Allen*, 565 F.3d 1258, 1275 (11th Cir. 2009) ("A petitioner cannot show sentencing phase prejudice when the jury recommends a sentence of life instead of death."). Taylor disagrees with these authorities, citing a concurrence from an unpublished Eleventh Circuit opinion issued last fall. (Doc. 53, at 15.) As that concurrence recognized, however, "this (Continued)

For all of the foregoing reasons, Taylor's Motion to Alter or Amend is **denied** as to the January 25 Order and Judgment's treatment of Claim III.C.  No certificate of appealability will be issued as to this claim or any of its subparts.

### D.      Claim III.B.ii.a (Ineffective Assistance as to Duffel Bag/Wallet/Purse).

As the third ground for his Motion to Alter or Amend, Taylor turns his attention to Claim III.B.ii.a, which alleges ineffective assistance with respect to certain trial exhibits, namely Taylor's blue duffel bag, Taylor's wallet, and victim Sherry Gaston's purse.  (Doc. 25, ¶¶ 175-94.)  Petitioner maintains that these items contained prejudicial materials, such as documents reflecting that Taylor had previously been convicted of misprision of a felony, that he had been charged with breaking and entering a vehicle, that his driver's license had been suspended, and that he had financial delinquencies such as overdue loan payments and medical bills.  In Claim III.B.ii.a, Taylor asserted that his trial counsel rendered ineffective assistance in failing to review and object to the admission into evidence of such prejudicial materials.

The January 25 Order explained that Claim III.B.ii.a "was first presented by Taylor in his disallowed Second Amended R32 Petition and is therefore procedurally barred."  (Doc. 50, at 60.)[10]  In opposing Taylor's § 2254 Petition, the State argued that Claim III.B.ii.a was not properly before this Court for that reason.  (Doc. 33, at 56.)  With respect to a closely related habeas claim involving the duffel bag, the State argued in a filing dated October 2, 2015, "[T]here is no reason that Taylor could not have investigated and raised these claims prior to … 2005. … The fact that ***Taylor's counsel did not bother to … interview jurors at an earlier date***

_____

inconsistency does not affect the outcome of Mr. [Taylor's] case."  *Waldrop v. Commissioner, Alabama Dep't of Corrections*, --- Fed.Appx. ----, 2017 WL 4271115, *23 (11th Cir. Sept. 26, 2017) (Martin, J., concurring).  Regardless of whether the rule is that set forth in *Lee* or the *Martin* concurrence, the *Strickland* prejudice analysis as set forth in footnote 96 of the January 25 Order remains unchanged.  Accordingly, Taylor's argument is a red herring, and there is no manifest error of law or fact here that might warrant relief under Rule 59(e).

[10]      That is to say, Taylor first presented this claim to the Alabama courts in the proposed Second Amended Rule 32 Petition that he filed in September 2011, following remand of the Rule 32 proceedings by the Alabama Court of Criminal Appeals.  The state courts disallowed Taylor's Second Amended Rule 32 Petition on jurisdictional / procedural grounds under Alabama law, because it improperly and impermissibly sought to expand the scope of the Court of Criminal Appeals' limited remand.

does not entitle Taylor to raise the claim in an untimely petition." (*Id.* at 41 (emphasis added).) Taylor responded that he could show cause and prejudice to excuse the procedural default. As to "cause," Taylor argued that (i) "[d]espite repeated attempts to access the exhibits …, Mr. Taylor's habeas counsel was not granted access to the exhibits until … years after the Corrected First Amended Petition was filed;" and (ii) "[b]ecause he was not afforded access to the trial exhibits during Rule 32 proceedings prior to filing the Corrected First Amended Petition, Mr. Taylor was not aware that certain of the exhibits contained inadmissible and prejudicial materials, and thus could not allege claims based on those facts." (Doc. 43, at 62.)

The January 25 Order found that Taylor had failed to make an adequate showing of cause to overcome the procedural default of Claim III.B.ii.a. In so concluding, the Court reasoned as follows:

> "As discussed in the Claim II.C cause-and-prejudice analysis, … Taylor has been aware for many years that the jurors had reviewed evidence of his criminal history during the deliberations. The sources of that evidence (*i.e.*, Taylor's duffel bag and wallet) could readily have been ascertained [upon] reasonable follow-up inquiry by Taylor's counsel after the trial, during the direct appeal, or during state post-conviction proceedings prior to the 2005 judgment. … [T]he factual basis of Claim III.B.ii.a … was reasonably available to Taylor beginning no later than August 27-28, 1998, when he was first placed on direct notice that the jurors had reviewed improper materials …."

(Doc. 50, at 60.) Indeed, the January 25 Order elaborated, Taylor had moved for a new trial in October 1998 on the ground that a female juror (whose identity was known to defense counsel) had appeared on a radio program aired in August 1998 (mere days after Taylor's sentencing hearing) "discussing the fact that they had seen evidence during the guilt phase that Jarrod Taylor had a prior conviction." (*Id.* at 58.) Under Alabama law, Taylor's counsel was free to make inquiries of that juror (or any other juror) at any time between August 1998 and 2005 to identify what evidence of Taylor's criminal history the jurors had seen, which inquiries "would in all likelihood have led Taylor's counsel directly to the duffel bag and wallet" and yielded the factual predicate for Claim III.B.ii.a that they claim was not available to them until September 2011. (*Id.* at 59.)[11] Simply put, Taylor's lawyers knew in October 1998 that the jurors had seen

---

[11]     This reasoning was buttressed by Taylor's assertion in his § 2254 Petition that the State's investigators visited the jury's foreperson "[i]n the months following trial," at which time the foreperson indicated that the jury had become aware of Taylor's criminal history by reviewing the contents of the blue duffel bag. (Doc. 25, ¶ 99.) If the foreperson voluntarily
(Continued)

something they should not have seen.  Had they interviewed the jurors (which they were permitted to do under Alabama law), Taylor's trial and post-conviction counsel could have pinpointed long before 2005 how the jurors had come to know of Taylor's prior conviction (*i.e.*, the materials in the duffel bag), which in turn would have apprised counsel of the factual basis of Claim III.B.ii.a in ample time to raise a timely Rule 32 ineffective assistance claim on that basis in state post-conviction proceedings.  During § 2254 proceedings, the State had expressly argued that Taylor had not "bothered" to interview jurors on this subject prior to 2005, such that he could not show cause for the procedural default.  Taylor made no factual showing or argument in response to that contention.

In his Rule 59(e) Motion, Taylor urges the Court to revisit the "cause" analysis from the January 25 Order.  As grounds for this request, Taylor "respectfully advises the Court that, prior to … October 2005, habeas counsel did attempt to locate and contact all of the jurors from Mr. Taylor's trial," but "did not learn from them that the trial evidence contained information regarding Mr. Taylor's criminal history," and offers to "submit evidence" of same.  (Doc. 53, at 17-18 & n.8.)  This carefully-worded assertion suffers from glaring defects.  Most obviously, a Rule 59(e) Motion is not an appropriate vehicle to proffer previously available evidence omitted from movant's earlier submissions.[12]  In briefing the § 2254 Petition, the State expressly argued

---

provided that information to the State's investigators, then it stands to reason that the foreperson would have provided the same information to Taylor's legal team had they made appropriate inquiries at any time between 1998 and 2005.  Taylor certainly never suggested that she had refused to divulge that information to his attorneys or investigators upon direct inquiry prior to 2005.

[12]    *See, e.g., Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) ("A Rule 59(e) motion cannot be used to … raise argument or present evidence that could have been raised prior to the entry of judgment.") (citation and internal marks omitted); *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) ("the moving party will not prevail on a Rule 59(e) motion that introduces previously unsubmitted evidence absent a showing that the evidence was unavailable at the time of the judgment"); *see generally Lugo v. Secretary, Florida Dep't of Corrections*, 750 F.3d 1198, 1212 (11th Cir. 2014) ("It is not an abuse of discretion for the district court to deny a motion under Rule 60(b) when that motion is premised upon an argument that the movant could have, but did not, advance before the district court entered judgment.") (citation omitted); *Ramsey v. Gamber*, 469 Fed.Appx. 737, 738-39 (11th Cir. Mar. 15, 2012) ("the district court did not abuse its discretion by denying the Rule 59(e) motion because the evidence Ramsey sought to introduce was available months before the district court granted summary judgment").

that Taylor could have raised the duffel bag / wallet issues earlier and that his counsel's failure to interview jurors prior to 2005 to ascertain the alleged improper contents of those exhibits did not constitute cause to excuse the procedural default. Faced with this argument that Taylor reasonably could have obtained the facts underlying Claim III.B.ii.a had his habeas counsel merely interviewed jurors in a timely manner, petitioner chose to say nothing about – and to submit no evidence concerning – any alleged juror interviews prior to 2005. Having elected to remain silent at that time, Taylor is not entitled to use Rule 59(e) now to submit previously available evidence to rebut the State's procedural argument.[13]

As an additional ground for seeking reconsideration of the January 25 Order and Judgment as they relate to Claim III.B.ii.a, Taylor asserts that "the Court overlooked evidence in the record establishing cause." (Doc. 53, at 19.) The evidence in question documented postconviction counsel's efforts to gain access to the trial exhibits, and the Mobile County Circuit Court's purported failure to allow such access until April 2011. (*Id.*) Contrary to the Rule 59(e) Motion, the undersigned did not "overlook" this showing. Rather, the January 25 Order did not address this evidence because it was not significant to the "cause" analysis. At most, Taylor showed that his counsel's attempts to examine the contents of duffel bag were deflected by the state courts for many years. Such evidence does not negate the presence of other avenues by which petitioner reasonably could and should have discovered the factual basis

---

[13] Besides, it bears noting that Taylor's Rule 59(e) Motion stops well short of stating that he expressly inquired of the jurors prior to the 2005 how they had obtained information about Taylor's criminal history, saying only that "counsel did not learn from them that the trial evidence contained information regarding Mr. Taylor's criminal history." (Doc. 53, at 18.) He does not indicate that counsel ever asked them that question. And of course Taylor's "counsel did not learn from" jurors that the trial evidence included facts concerning Taylor's criminal history; rather, counsel could and should have learned that from reviewing the transcript of the hearing conducted on October 5, 1998. (Vol. 10, R-39, at 1647 (notifying the trial judge of a radio program in which a female juror "was discussing the fact that they had seen evidence during the guilt phase that Jarrod Taylor had a prior conviction").) The same information was available from reviewing Taylor's Amended Motion for New Trial filed in October 1998. (Vol. 1, R-2 at 178 ("On a talk show on Thursday and Friday, August the 13th and 14th a juror was on the air and testified … that the jury was made aware of the prior criminal record of Jarrod Taylor through evidence and/or personal effects purportedly belonging to the defendant Taylor. … [I]f said evidence did exist, it was illegal and improper.").) Taylor's postconviction counsel were on notice of this evidence – and the importance of speaking with jurors to investigate same – from the inception of their involvement in this matter.

of Claim III.B.ii.a well before 2005. Again, the January 25 Order explained that Taylor and his lawyers had been on notice since August 1998 that a juror had publicly declared that Taylor's jury had reviewed improper materials relating to his criminal history, and that the record was devoid of evidence that "defense counsel (including trial counsel, direct appeal counsel or state post-conviction counsel) attempted to contact that juror (or any other juror) to identify what evidence of Taylor's criminal history the jury had seen in its deliberations." (Doc. 50, at 58-59.) Because of that omission, the January 25 Order and Judgment concluded, Taylor failed to demonstrate "cause" to excuse the procedural default of Claim III.B.ii.a. The evidence Taylor did submit – relating to counsel's unsuccessful attempts to access the trial exhibits directly – was neither conclusive of, nor particularly significant to, the "cause" analysis given the existence of another viable means of reasonably discovering those facts (*i.e.*, timely juror interviews). Simply put, Taylor failed to meet his burden of showing that he could not reasonably have discovered the factual basis of Claim III.B.ii.a without direct review of the exhibits themselves.[14]

For all of the foregoing reasons, the Motion to Alter or Amend is **denied** as to Claim III.B.ii.a. No certificate of appealability will issue on the question of whether Taylor made an adequate showing of "cause" – prior to issuance of the January 25 Order and Judgment – to excuse his procedural default of that claim.

### E. Request for COA as to Hurst v. Florida *Retroactivity.*

As the next ground for his Rule 59(e) Motion, Taylor quarrels with the denial of a certificate of appealability ("COA") as to Claim XI.B.ii, in which he maintains that Alabama's death penalty scheme is unconstitutional pursuant to *Hurst v. Florida*, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016). The January 25 Order and Judgment denied this claim for two independent reasons. First, "[b]ecause *Hurst v. Florida* is simply a straightforward application of *Ring*, … its retroactivity is tethered to *Ring*. … And … *Ring* is not retroactively applicable to cases (such as Taylor's) that were already final on direct review when the new rule in *Ring* was handed down.

---

[14]      *See generally Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) ("Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default."); *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (explaining that "cause" for excusing a procedural default includes "evidence that ***could not reasonably have been discovered in time*** to comply with the rule") (emphasis added).

Thus, Taylor cannot obtain retroactive application of *Hurst* for the same reason that he cannot obtain retroactive application of the new rule established in *Ring* after his convictions and sentences were final on direct review." (Doc. 50, at 132-33 (footnotes omitted).) Second, the January 25 Order continued, "*Hurst* would not alter the result of Claim XI.B.ii even if it were properly applied to Taylor's § 2254 Petition (which it is not). … [T]he portion of the Florida capital sentencing scheme deemed constitutionally objectionable in *Hurst* is simply not present in Alabama. … [T]here is no *Hurst v. Florida* problem here because Taylor's jury unanimously found multiple aggravating circumstances (each of which rendered him eligible for the death penalty) beyond a reasonable doubt. Taylor's *Hurst* argument thus fails on the merits …." (*Id.* at 135-36.)

In his Motion to Alter or Amend, Taylor contends that he is entitled to a COA on the January 25 Order's retroactivity ruling as to *Hurst*. (Doc. 53, at 22 ("This Court thus should grant a COA on the issue of whether *Hurst* applies retroactively to defendants, such as Mr. Taylor"). Employing what can only be described as tortured reasoning designed to circumvent a clear and obvious retroactivity bar, Taylor reasons that even though *Hurst* said it was applying the new procedural rule announced in *Ring*,[15] and even though the new rule in *Ring* is not retroactively applicable to Taylor because his case was already final on direct review when *Ring* was decided, *Hurst* somehow should apply retroactively to Taylor because his case became final after *Apprendi* and because *Hurst* mentioned *Apprendi* (which was the doctrinal foundation of the new *Ring* procedural rule that *Hurst* was applying to the Florida capital statute), such that "*Hurst* traces back to *Apprendi* rather than to *Ring*." (Doc. 53, at 20-22.) As best the Court can discern, Taylor is arguing that courts should pretend that *Hurst* did not clearly, specifically, and expressly apply the narrow holding from *Ring* (which the Supreme Court has declared to be a

---

[15] "The holding of *Ring* is narrow: the Sixth Amendment's guarantee of jury trials requires that the finding of an aggravating circumstance that is necessary to imposition of the death penalty must be found by a jury." *Lee*, 726 F.3d at 1198. The Supreme Court declared that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 358, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). This clear, unambiguous language directly undercuts Taylor's insistence that the Supreme Court in *Summerlin* found only "that *Ring* announced a new rule *as to petitioner Summerlin*" or that its holding was somehow confined to "convictions finalized before the rule in *Apprendi* was announced." (Doc. 53, at 22 n.9.) Nor has Taylor identified any court in any jurisdiction that has so construed *Summerlin*.

new procedural rule for retroactivity purposes), but should instead read *Hurst* as applying more general principles from *Apprendi*, so as to avoid the unavoidable fact that the rule in *Ring* (which was the moving force of the *Hurst* ruling) is not retroactively applicable to Taylor.[16]

The weaknesses in Taylor's argument that *Hurst v. Florida* should be applied retroactively to him as an application of *Apprendi* rather than of *Ring* are readily apparent. Nonetheless, the Court need not decide whether jurists of reason could find his novel "*Apprendi* gap" retroactivity theory (which no court anywhere appears ever to have embraced) debatable. After all, a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "[T]he threshold and only question at the COA stage is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Lambrix v. Secretary, DOC*, 872 F.3d 1170, 1179 (11ᵗʰ Cir. 2017) (citations and internal quotation marks omitted). "When the district court denies a habeas petition on procedural grounds …, the prisoner in order to obtain a COA, still must show both (1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (citation and internal quotation marks omitted). With respect to Claim XI.B.ii, Taylor's argument that *Hurst*

---

[16]     Implicit in Taylor's argument is that *Ring* and *Apprendi* are interchangeable, and that *Hurst* would necessarily have been dictated by *Apprendi* standing alone even if *Ring* did not exist. Such an argument amounts to revisionist history that inaccurately understates the importance of *Ring* and conflicts with binding authority. Indeed, the Eleventh Circuit has explained how *Ring* broke new ground, to-wit: "***Ring* established a new rule of criminal procedure, one that was not dictated by precedent existing before the *Ring* decision was released**. … *Apprendi* may have been a harbinger for the partial demise of *Walton* and the constitutional validity of judge-imposed death sentences. Nonetheless, prior to the outcome in *Ring*, courts had been upholding judge-imposed death sentences … The constitutionality of judge-imposed death sentences was accepted in state and federal courts." *Turner v. Crosby*, 339 F.3d 1247, 1284-85 (11ᵗʰ Cir. 2003) (emphasis added). "Under *Turner* and *Summerlin*, a petitioner may not appeal a conviction or bring a habeas attack based on *Ring* violations that occurred before *Ring* was handed down." *Sibley v. Culliver*, 377 F.3d 1196, 1208 (11ᵗʰ Cir. 2004). To the extent Taylor seeks a COA to pursue theories that clash with *Summerlin*, *Turner* and *Sibley*, he is not entitled to one. After all, "no COA should issue where the claim is foreclosed by binding circuit precedent because reasonable jurists will follow controlling law." *Hamilton*, 793 F.3d at 1266 (citation and internal quotation marks omitted).

*v. Florida* applies retroactively to him is only half the battle. To be entitled to a COA, Taylor would have to show not only that jurists of reason could debate the January 25 Order's determination that *Hurst* does not apply retroactively to Taylor's case, but also that jurists of reason could debate whether he was entitled to relief under *Hurst v. Florida*. The January 25 Order explained at length why Taylor's *Hurst* argument fails on the merits. (Doc. 50, at 133-36 & n.130.) In his Rule 59(e) Motion, Taylor advances no explanation whatsoever for why he believes jurists of reason could debate this point; rather, he concedes that "[t]he Eleventh Circuit recently held that Alabama's former capital sentencing statute … did not violate *Hurst v. Florida*." (Doc. 53, at 23.)

In the absence of any reason (which Taylor's Rule 59(e) Motion does not articulate) to believe that Taylor's *Hurst v. Florida* argument deserves encouragement to proceed on the merits, the Court will not issue a COA as to the correctness of the January 25 Order's procedural ruling that *Hurst* does not apply retroactively to Taylor's case. It would be a pyrrhic victory at best for Taylor to convince the Eleventh Circuit that he is entitled to retroactive application of *Hurst v. Florida* if he lacks any debatable argument that such retroactive application of *Hurst* could result in his death sentence being deemed unconstitutional. The January 25 Order explained why Taylor's merits argument under *Hurst* is not fairly debatable. As such, the Motion to Alter or Amend is **denied** as to Taylor's request for a COA as to "whether *Hurst* would apply retroactively to defendants whose convictions became final after *Apprendi* but before *Ring*" (doc. 53, at 20).

> ### F.    *Request for COA as to Claim X and Procedural Bar of Disallowed Claims.*

Finally, Taylor's Rule 59(e) Motion seeks reconsideration of the denial of a COA as to Claim X and the January 25 Order's determination that all claims first raised in Taylor's Second Amended Rule 32 Petition and Revised Second Amended Rule 32 Petition were procedurally defaulted. (Doc. 53, at 23.)

The January 25 Order and Judgment addressed in extensive detail Taylor's arguments that (i) the new claims presented in his Second Amended Rule 32 Petition and Revised Second Amended Rule 32 Petition should not be deemed procedurally barred, and (ii) the state courts' refusal to allow him to amend his Rule 32 petition in 2011 and 2012 violated his rights to due process and fundamental fairness. (Doc. 50, at 19-25, 120-124.) In doing so, the January 25 Order explained that, as a matter of well-settled Alabama law, "a trial court lacks authority to

allow an amendment of a Rule 32 petition on limited remand from an Alabama appellate court."
(*Id.* at 22.) Thus, in disallowing Taylor's September 2011 and April 2012 proposed amendments
to his Rule 32 petition, the Alabama courts were following an independent and adequate state
procedural rule. After careful analysis of Alabama law, "the Court readily conclude[d] that the
state procedural bar was 'adequate,' in the sense that the rule in question was firmly established,
regularly followed, and not applied in arbitrary or unprecedented fashion against Taylor." (*Id.* at
24.)[17] In so concluding, the January 25 Order explained that "Taylor's argument to the contrary
rests on an interpretation of *Ex parte Apicella*, 87 So.3d 1150, 1154 (Ala. 2011), that has been
thoroughly discredited by Alabama courts both in this case and in analogous circumstances."
(*Id.* at 24 n.14.) Insofar as Taylor repackaged these objections to the Alabama courts' refusal to
allow his 2011 and 2012 amendments to his Rule 32 petition as a due process claim in Claim X
of his § 2254 Petition, the January 25 Order concluded that "the Alabama courts were under no
constitutional obligation to allow Taylor to keep on amending his Rule 32 petition at will (as he
had had already done thrice) years after the fact, particularly after a limited remand from state
appellate courts. … [N]o independent constitutional violation arises from the state courts' refusal
to allow Taylor to amend his Rule 32 petition a fourth or a fifth time, roughly nine years after
those Rule 32 proceedings commenced and six years after the Rule 32 petition was initially
dismissed by the trial court." (Doc. 50, at 124.)

These rulings were well-grounded in applicable law. They were not close calls or even
reasonably debatable questions, in the undersigned's judgment. Indeed, it is well settled that,
notwithstanding Taylor's wish to keep his Rule 32 petition active, open and available for as
many amendments as he saw fit for as many years as he liked, "[a] court is not obliged to stand
by as successive teams of attorneys cull the record and conjure up new arguments for the court to
consider. At some point, the court has to assume the parties have made their arguments, and it
can begin resolving the disputed issues." *Hill v. Jones*, 81 F.3d 1015, 1021 (11th Cir. 1996)
(footnote omitted). That the state courts did so here, after Taylor's Rule 32 petition had been

----

[17] In that regard, the Eleventh Circuit has observed that "it is plain that under
Alabama law, amendments to Rule 32 petitions are not filed as a matter of right. … [A]
petitioner does not have an absolute right to amend his petition prior to the entry of judgment."
*Boyd v. Commissioner, Alabama Dep't of Corrections*, 697 F.3d 1320, 1337 (11th Cir. 2012)
(citations omitted).

pending for years and after he had amended it multiple times, in no way contravened state law or implicated any federal constitutional interests. The January 25 Order and Judgment set forth these findings, and the factual, legal and analytical underpinnings of same, in considerable detail, addressing each of Taylor's objections and counterarguments along the way. At the conclusion of this exercise, the undersigned was convinced that these issues of procedural default and due process relating to the state court's disallowance of Taylor's Second Amended Rule 32 Petition and Revised Second Amended Rule 32 Petition did not deserve encouragement to proceed further; therefore, no COA was issued.

In his Rule 59(e) Motion, Taylor asks the Court to reconsider that determination and grant a COA on these questions. He offers no additional argument or critique of the January 25 Order; rather, he simply says that he wants a COA "[f]or the reasons detailed in the Reply." (Doc. 53, at 23.) Nothing in this assertion suggests that it was a manifest error of law or fact for the January 25 Order and Judgment to deny him a COA on issues of procedural default and due process violations relating to the state courts' disallowance of 2011 and 2012 amendments to Taylor's Rule 32 petition after limited remand by the Alabama Court of Criminal Appeals. Accordingly, the Motion to Alter or Amend is **denied** as to this issue.

## III. Conclusion.

For all of the foregoing reasons, Petitioner's Motion to Alter or Amend the Court's Judgment Dismissing the Amended Petition for Writ of Habeas Corpus (doc. 52) is **denied** in its entirety.

DONE and ORDERED this 12th day of March, 2018.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE